IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CATLIN SPECIALTY INSURANCE COMPANY, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. RDB-13-826 |
| BARRY I. ARON, M.D., *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This declaratory judgment action is a medical malpractice insurance coverage dispute. Defendant Dr. Barry I. Aron ("Dr. Aron") is an obstetrician/gynecologist who had purchased an insurance policy from Plaintiff Catlin Specialty Insurance Co. ("Catlin"). After becoming aware of a claim by Defendant Sherry Marie Pfenninger ("Ms. Pfenninger") against Dr. Aron arising out of a 2010 surgery, Catlin filed this declaratory judgment action to determine the scope of its duty to defend and indemnify Dr. Aron and Barry I. Aron, M.D., P.C. (Dr. Aron's professional corporation). Currently pending before this Court are the Defendants' Motion for Partial Summary Judgment (ECF No. 26)[1] and Plaintiff's Motion for Summary Judgment (ECF No. 30). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that

---

[1] Specifically, the pending motion was filed by Defendants Barry I. Aron, M.D. and Barry I. Aron, M.D., P.C. This Court refers to these Defendants collectively as "the Aron Defendants." The other named Defendants in this action—Jerry and Sherry Marie Pfenninger—have brought a medical malpractice action against these Aron Defendants in *Pfenninger et al. v. Aron et al.*, Civ. A. No. RDB-13-844. The Pfenningers have not joined in the Aron Defendants' Motion for Partial Summary Judgment.

follow, the Motion of Defendants Dr. Barry I. Aron and Barry I. Aron, M.D., P.C., for Partial Summary Judgment (ECF No. 26) is GRANTED, and the Plaintiff's Motion for Summary Judgment (ECF No. 30) is DENIED.

## BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

### I.    THE INSURANCE POLICIES

Dr. Aron purchased one-year insurance policies from Catlin Specialty Insurance Co. over the course of several years.[2] The 2012 Policy ran from January 1, 2012 to January 1, 2013, while the 2013 Policy ran from January 1, 2013 to January 1, 2014.[3]  Defs.' Mem. MPSJ 2. Both policies named Dr. Aron as the "named insured" and included Barry I. Aron, M.D., P.C.—Dr. Aron's professional corporation—as an "additional named insured." *Id.* at 5.

The 2012 Policy explains the extent of coverage as follows:

> The Company, subject to the exclusions, limits of liability, and other terms and conditions hereof, will pay on behalf of the **Insured** those sums which the **Insured** is legally obligated to pay as **damages** because of a **loss event** within the **policy territory**, to which this insurance applies, subsequent to the **retroactive date** and for which a **claim** is first made in writing

---

[2] Specifically, the first insurance policy purchased by Dr. Aron was in effect from January 1, 2010 to January 1, 2011, and he renewed the policy for the periods of January 1, 2011 to January 1, 2012; January 1, 2012 to January 1, 2013; and January 1, 2013 to January 1, 2014.

[3] It appears that the parties agree that the 2012 Policy is the applicable policy in this case. *See* Def. Mot. Summ. J. 1, ECF No. 26; Pl.'s Mem. MSJ 4.

> during the policy period and reported to the Company in writing during the policy period or any applicable **extended reporting period**.

Pl.'s Am. Compl. Ex. G 15, ECF No. 6–8 (hereinafter "2012 Policy").[4]  Additionally, one of the conditions of the Policy was that the insured—i.e., Dr. Aron—had to provide Catlin Specialty Insurance with written notice of a claim by the expiration of the applicable policy. Defs.' Mem. MPSJ 6.

The 2012 Policy defines the term "claim" accordingly:

> A. "**claim**" means:
>   1. the filing of a lawsuit against an **Insured**, and/or
>   2. **written notice** of intent to file a lawsuit or to arbitrate against an **Insured**, and/or
>   3. a written demand for money or services delivered to an **Insured**, and/or
>   4. **written notice** of a **loss event** from the **Named Insured**, **Additional Insured** or **Additional Named Insured** detailing the name of a patient, witnesses and the circumstances under which the **Insured** became aware of **injury** suffered; and
>
> as a result of a **loss event** which occurred subsequent to the **retroactive date** of this Policy and which has been reported to the Company in writing, prior to the **expiration date** or the expiration of an applicable **Extended Reporting Period** Endorsement.

2012 Policy at 21–22.  The 2012 Policy also explains how the timing of the claim and the reporting of the claim are to be calculated.  Specifically, the Policy states that:

> [A] claim against an **Insured** is first made when the **Named Insured**, **Additional Insured** or an **Additional Named Insured** receives during the policy period (i) a written demand for money or services from a claimant or claimant's attorney or agent or (ii) service of process in a suit or other proceeding

---

[4] Unless otherwise specifically noted, the formatting of quotations from the 2012 Policy is reproduced as it appears in that document.  As noted in the Policy, bolded words or phrases are expressly defined therein.

3

> seeking **damages** or services, as a result of an alleged **loss event** to which this Policy applies, or when the **Named Insured**, **Additional Insured** or **Additional Named Insured** becomes aware of a **loss event** to which this Policy applies or (iii). a written demand for money or services delivered to an **Insured**, or (iv.) **written notice**  of a **loss event** from the **Named Insured**, **Additional Insured** or **Additional Named Insured** detailing the name of a patient, witnesses and the circumstances under which the Insured became aware of **injury** suffered.

2012 Policy at 19.  Meanwhile, a claim is considered reported "on the date when [Catlin Specialty Insurance Co.] first receives **written notice** from a **Named Insured**, **Additional Insured** or **Additional Named Insured** that a **claim** has been made against an **Insured** as a result of an alleged **loss event** to which this Policy applies."  *Id.* at 20.

Finally, the Policy identifies several coverage exclusions.  Of particular import in this case is Exclusion 11(ii), which expressly excludes coverage for "**claims**, incidents or **loss events** which were first brought to the attention of the **Insured** or reported to another insurer prior to the **inception date**."  *Id.* at 16.

## II.   THE SURGERY ON MS. PFENNINGER

Defendant Dr. Barry Aron ("Dr. Aron") is an obstetrician/gynecologist practicing in Charles County, Maryland.  Defs.' Mem. Supp. Mot. Partial Summ. J. 5, ECF No. 26 (hereinafter "Def. Mem. MPSJ").  This suit arises out of a surgery that Dr. Aron performed on Defendant Sherry Marie Pfenninger ("Ms. Pfenninger") on December 30, 2010.  The surgery—known as a pelvic laparotomy—required Dr. Aron to make an incision in the abdominal wall.  Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 30 (hereinafter "Pl.'s Mem. MSJ").  Dr. Aron removed a cystic mass in the right pelvic area and tied off a number of

vessels.[5]  *Id.* at 7.  Subsequently, a pathological examination revealed that Dr. Aron had removed a small segment of Ms. Pfenninger's right ureter, which is a tubular structure that allows urine to drain from the kidney to the bladder.  *Id.*  The pathologist who conducted the examination informed Dr. Aron of the issue on January 3, 2011.  *Id.*  After consulting with an urologist and a radiologist, Dr. Aron contacted Ms. Pfenninger—who had already been discharged—and informed her that she needed to return to the hospital so that a catheter could be inserted directly into her kidney and allow urine to drain into an external bag until her ureter could be surgically repaired.[6]  *Id.* at 8-9.

### III.   <u>EVENTS FOLLOWING THE SURGERY</u>

As noted above, Dr. Aron renewed his policy with Catlin Specialty Insurance for the 2012 calendar year.  The renewal application contained the following question: "Has any claim or suit for alleged malpractice ever been brought against you, or are you aware of circumstances that might reasonably lead to such a claim or suit?"  Pl.'s Mem. MSJ 12.  Dr. Aron responded to that question in the affirmative in his November 11, 2011, renewal application.  *Id.*  However, he did not include a "claims supplement" with respect to Ms.

---

[5] During the surgery, Dr. Aron perforated Ms. Pfenninger's small bowel; as a result, Dr. Aron called a general surgeon, Dr. Suryakant J. Patel, who performed a "resection with side-to-side reanastomosis," which is a procedure whereby a portion of the bowel is removed and the two loose ends are reattached.  *See* Pl.'s Mem. MSJ 6-7.  Defendants have not specifically disputed this fact, but assert that the fact is irrelevant because the Pfenningers' claims do not relate to this aspect of the surgery.

[6] Catlin Specialty Insurance Co. contends that Dr. Aron's surgery triggered the Peer Review process at the Civista Medical Center.  *See* Pl.'s Mem. MSJ 9-11.  The basis for this contention is that Dr. Aron's counsel objected to any questions about the peer review process during Dr. Aron's deposition on the basis of the peer review privilege.

Pfenninger's claim as the application directed.[7]  *Id.*  Nevertheless, Catlin Specialty Insurance renewed Dr. Aron's policy.

Ms. Pfenninger's counsel first contacted Dr. Aron on August 22, 2012, and requested Ms. Pfenninger's medical file from Dr. Aron.  Pl.'s Mem. MPSJ 8 n.5.  On November 26, 2012, Ms. Pfenninger's counsel mailed Dr. Aron a demand letter which stated that Ms. Pfenninger intended to file a medical negligence claim against Dr. Aron and made a settlement demand of $725,000.  Pl.'s Mem. MSJ 11.  Ms. Pfenninger's counsel mailed another letter on January 4, 2013.  *Id.* at 12.  Dr. Aron contacted Catlin Specialty Insurance Co. on January 7, 2013 and notified it of Ms. Pfenninger's claim.  Def. Mem. MPSJ 6.  On February 1, 2013, Catlin Specialty Insurance denied Dr. Aron's claim.  The denial notice stated that "[b]ecause you waited to report this claim past the expiration date of the applicable policy [i.e., December 31, 2012], Catlin has no obligation to defend or indemnify you in connection with this claim."  Def. Mem. MPSJ 7 (quoting ECF No. 6-9) (additions in original).

Thereafter, on March 18, 2013, Catlin Specialty Insurance filed this action seeking a declaratory judgment that Catlin has no duty to defend or indemnify Dr. Aron and that it has no liability to any other party arising out of the Pfenninger surgery.  Def. Mem. MPSJ 3.  The Pfenningers then filed an action against Dr. Aron and his professional corporation, Barry I. Aron, M.D., P.C. alleging medical malpractice.[8]  *Id.*

---

[7] The application contained a annotation in the margin stating "See Attached Loss Runs." The Loss Runs, however, did not mention Ms. Pfenninger.  *See* Pl.'s Mem. MSJ 12-13.

[8] That action is pending in this Court.  *See Pfenninger et al. v. Aron et al.*, Civ. A. No. RDB-13-844.  In December of 2013, that case was stayed for 90 days by Letter Order.  *See* ECF No. 30.  Subsequently, this Court granted the Aron Defendants request to extend the deadline for filing a Certificate of Meritorious

STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

When both parties file motions for summary judgment, as here, the court applies the same standard of review to both motions, with this Court considering "each motion separately on its own merits to determine whether either [side] deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003), *cert denied*, 540 U.S. 822 (2003); *see also havePower, LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720 (3d ed. 1983)).

ANALYSIS

---

Defense until May 30, 2014. *See* ECF No. 33.

The two main issues raised by the parties' cross-motions for summary judgment are (1) whether § 19-110 of the Insurance Article of the Maryland Code applies to the insurance Policy in this case; and (2) whether Exclusion 11(ii) of the Policy excludes coverage for the claims in this case because the surgery on Ms. Pfenninger constituted an "incident" of which Dr. Aron was aware prior to the commencement of the 2012 policy period.

I. **APPLICATION OF § 19-110 TO THE POLICY**

The Aron Defendants contend that § 19-110 of the Insurance Article of the Maryland Code applies to the Policy in this case and, therefore, requires Plaintiff Catlin Specialty Insurance to demonstrate that Dr. Aron's late reporting of Ms. Pfenninger's claim somehow prejudiced Catlin. Section 19-110 provides:

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

Md. Code, Ins. § 19-110. Thus, "if an insurer is to disclaim coverage based on failure to provide timely notice that is required under the terms of an insurance policy, the insurer must establish that the failure to provide notice caused actual prejudice to the insurer." *McDowell Building, LLC v. Zurich American Insurance Co.*, Civ. A. No. RDB-12-2876, 2013 WL 5234250, at *4 (Sept. 17, 2013).

The Aron Defendants contend that *Sherwood Brands, Inc. v. Great American Insurance Co.*, 418 Md. 300, 13 A.3d 1268 (2011), and *McDowell Building, LLC v. Zurich American Insurance*

8

*Co.*, Civ. A. No. RDB-12-2876, 2013 WL 5234250 (Sept. 17, 2013), dictate the outcome of this case and require the application of § 19-110 to the 2012 Policy. Plaintiff Catlin Specialty Insurance argues that, due to the specific language in the Policy, § 19-110 is inapposite.

Because this Court has recently summarized the history and interpretation of § 19-110 in its *McDowell Building* decision, there is no need to do so again. *See* 2013 WL 5234250, at *5-8. Suffice it to say that this Court concluded in *McDowell Building* that § 19-110 could apply to claims-made-and-reported policies because Maryland law requires that timely notice provisions in insurance policies be construed as covenants rather than conditions precedent. *See McDowell Building*, 2013 WL 5234250, at *8 (citing *Sherwood Brands*, 418 Md. at 327 n.21). Notably, Judge Hollander of this Court has since cited favorably to *McDowell Building* and, after independently reviewing the relevant case law, came to the same conclusion. *See Navigators Specialty Ins. Co. v. Medical Benefits Admins. of Md., Inc.*, Civ. A. No. ELH-12-2076, 2014 WL 768822, at *11-16 (D. Md. Feb. 21, 2014).

Despite these recent decisions, Catlin Specialty Insurance nevertheless argues that the present case is distinguishable. Specifically, Catlin points to *T.H.E. Insurance Co. v. P.T.P., Inc.*, 331 Md. 406 (1993)—an earlier case from the Court of Appeals of Maryland—which, in Plaintiff's view, held that that "the precursor to § 19–110 did not apply where a claims-made-and-reported policy had expired before the claim in issue was reported."[9] Pl.'s Mem. MSJ 20. Catlin contends that the results of *T.H.E. Insurance* and *Sherwood Brands* were different because "the policy in *T.H.E.* provided that a claim could only be made by written

---

[9] Catlin's characterization of *T.H.E. Insurance* does not comport with this Court's reading of that case, as detailed below.

notice to the insurer, [while] the policy in *Sherwood Brands* had no such limitation." *Id.* at 21. Applying this distinction to the case at hand, Catlin further argues that:

> The 2012 Policy defines claims solely to include matters that, as well as meeting other requirements, are also reported to Catlin in writing during the policy period. Additionally, the 2012 Policy does not contain any "language of contingency" like the policies in *Sherwood Brands* and *McDowell Bldg.* that could be construed to cast the reporting terms as conditions for coverage that otherwise would be triggered. Therefore, because a claim was not made under the clear and unambiguous terms of the 2012 Policy before it expired as detailed in the preceding section, § 19–110 does not apply to impose on Catlin any requirement to show prejudice.

*Id.* (citations omitted).

While this Court agrees that the language of the 2012 Policy differs slightly from that in *Sherwood Brands* and *McDowell Building*, it does not find *T.H.E. Insurance* to be either analogous or dispositive of this case. In *T.H.E. Insurance*, P.T.P., Inc. had purchased a claims-made insurance policy from T.H.E. Insurance Co. for the period between April 2, 1987 and April 2, 1988 for its "go-kart track" business. *Id.* at 412. The policy required written notice of a claim "as soon as practicable" and provided a 60-day extended reporting period. *Id.* at 412. Under the terms of the policy, coverage existed "only if a claim for damages because of [a] 'bodily injury' or 'property damage' [was] first made against any insured during the policy period," and a claim was "made" when written notice of the claim was received and recorded by T.H.E. Insurance Co. *Id.* at 411-12.

On August 27, 1987—during the duration of the policy—one of P.T.P.'s customers was injured. *Id.* at 408. The policy expired on April 2, 1988, and a claim for damages was

10

not made until June 6, 1988—more than 60 days after the policy expired.[10] *Id.*. Accordingly, T.H.E. Insurance Co. denied P.T.P.'s claim on the policy. *Id.* at 409.

The Court of Appeals ruled that T.H.E. Insurance Co.'s denial was proper, finding that the policy had expired before any claim was made. *Id.* at 415. Because the making of a claim (as opposed to the reporting of a claim) was a condition precedent for coverage, the Court of Appeals refused to apply § 19-110's requirement for a showing of prejudice. *See Sherwood*, 418 Md. at 332 (explaining the Court of Appeal's conclusion in *T.H.E. Insurance*). Noting that the purpose of § 19-110 was to protect against denials of coverage based upon the insured's failure to comply with the agreement's notice terms where that failure had not prejudiced the insurer, the Court of Appeals found that the particular interests protected by the statute were not implicated in *T.H.E. Insurance*. *See* 331 Md. at 421. Accordingly, the Court of Appeals ruled that § 19-110 was not applicable and, therefore, that the insurer was not required to provide a showing of prejudice prior to denying the claim.

As should be apparent, the posture of this case is significantly different than that of *T.H.E. Insurance*. Specifically, Ms. Pfenninger's counsel first mailed Dr. Aron a demand letter on November 26, 2012. Pl.'s Mem. MSJ 11. Unlike in *T.H.E. Insurance*,[11] the claim for which Dr. Aron seeks coverage was first made while the 2012 Policy was in effect. Thus, in this case, the operative fact is not the timing of the claim itself but the timing of the reporting of that claim.

---

[10] P.T.P. had renewed its insurance, but the renewed policy ran from May 27, 1988 to May 27, 1989 and had a retroactive date of May 27, 1988. Accordingly, claims that arose from events occurring before May 27, 1988—such as the August 2, 1987 accident—were not covered by the renewed policy.

[11] As noted above, the June 6, 1988 claim in *T.H.E. Insurance* was not made until after the April 2, 1988 expiration of the policy.

11

Catlin nevertheless attempts to blur this distinction by relying on the 2012 Policy's definition of a "claim," which requires (1) the filing of a lawsuit, written notice of intent to sue, written demand for money, or written notice of a loss event; *and* (2) written reporting to Catlin prior to the expiration date. Essentially, Catlin argues that, while the first factor of coverage is present, the second is not, and therefore, there is no coverage. Notably, however, this second element for coverage is merely a notice requirement. Thus, consistent with the Court of Appeals' interpretation in *Sherwood Brands* and this Court's conclusion in *McDowell Building*, the requirement of notice—even when appearing in the basic definition of a "claim"—must be construed as a covenant rather than a condition precedent.[12] Accordingly, failure to provide timely notice constitutes a breach of the Policy, and a policy breach triggers the applicability of § 19-110. As such, Catlin Specialty Insurance's denial of coverage was improper absent a showing of prejudice.

## II.   EFFECT OF EXCLUSION 11(ii)

The next issue is whether Exclusion 11(ii) of the 2012 Policy relieves Catlin Specialty Insurance of its duty to defend and indemnify Dr. Aron. Exclusion 11(ii) of the 2012 Policy states that "[t]his insurance does not provide coverage for or apply to . . . any liability of an **Insured** for all . . . **claims**, incidents or **loss events** which were first brought to the

---

[12] As noted above, Catlin also attempted to distinguish this case from *McDowell* by claiming that "the 2012 Policy does not contain any 'language of contingency' like the policies in *Sherwood Brands* and *McDowell Bldg.* that could be construed to cast the reporting terms as conditions for coverage that otherwise would be triggered." Pl.'s Mem. MSJ at 21. Contrary to this assertion, one of the express "Conditions" of the 2012 Policy was that "[i]n the event of a **claim, written notice** thereof shall be given to the Company, as required by this Policy as soon as practicable and, in any event, before the **expiration date** or the expiration of any **extended reporting period.**" 2012 Policy at 23.

attention of the **Insured** or reported to another insurer prior to the **inception date**." 2012 Policy at 16. It is undisputed that the inception date of the 2012 Policy was January 1, 2012.

What is disputed, however, is whether there was an "incident" that would trigger the applicability of Exclusion 11(ii). The term "incident" is not expressly defined by the Policy. Under Maryland law, insurance contracts are interpreted like other contracts, and undefined words "are given their 'customary, ordinary, and accepted meaning,' unless there is an indication that the parties intended to use the words in a technical sense." *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508 (Md. 1995) (quoting *Cheney v. Bell National Life*, 315 Md. 761, 766 (1989)). "If the language in an insurance policy suggests more than one meaning to a reasonably prudent lay person, [the language] is ambiguous." *Id.* If the policy language is ambiguous, then the language "will be construed liberally in favor of the insured and against the insurer *as drafter of the instrument.*"[13] *Dutta v. State Farm Ins. Co.*, 363 Md. 540, 556 (Md. 2001) (quoting *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72, 97-98 (Md. Ct. Spec. App. 1997)).

Catlin originally contended that there were two "incidents" triggering the applicability of the policy exclusion—(1) the pathology report received by Dr. Aron on January 3, 2011; and (2) Dr. Aron's receipt of a document request from Ms. Pfenninger's attorney. *See* Pl.'s Am. Compl. ¶¶ 78, 80. In their Motion for Partial Summary Judgment, the Aron Defendants contend that the term "incident," which is not defined by the Policy documents,

---

[13] In general, Maryland law treats insurance policies as normal contracts and, as such, "Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer." *Dutta v. State Farm Ins. Co.*, 363 Md. 540, 556 (Md. 2001). However, ambiguous provisions of insurance contracts are an exception to this rule; such ambiguous provisions are construed against the drafter, just as they would under normal contract interpretation rules. *See id.*

13

is ambiguous and, therefore, that Catlin cannot demonstrate that the policy exclusion is applicable in this case.  In its cross-motion for summary judgment, Catlin Specialty Insurance does not dispute that the term is undefined by the Policy, but asserts that the reasonably prudent lay person would understand the term to mean "a distinct occurrence or event, *esp.* one that attracts general attention or is noteworthy in some way."  Pl.'s Mem. MSJ 24 (quoting *The New Shorter Oxford Dictionary* 1336 (4th ed. 1993)).  Accordingly, Catlin concludes that, in light of the plain meaning of the term "incident," the coverage exclusion applies to any claim arising from Ms. Pfenninger's injury because the various complications with Ms. Pfenninger's surgery were particularly remarkable.  In their Reply brief, the Aron Defendants maintain that the term "incident" is ambiguous, pointing to other dictionary definitions that describe an incident as something that "occurs casually in the course of, or in connexion [sic] with, something else, of which it constitutes no essential part."  Defs.' Mem. MPSJ 10 (quoting *The Compact Edition of the Oxford English Dictionary*, vol. I at 1401 (1971)).

In determining the meaning of the term "incident," this Court must consider the contract as a whole.  *See Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508 (Md. 1995) ("In Maryland, insurance policies, like other contracts, are construed as a whole to determine the parties' intentions.").  While the Policy fails to define what constitutes an "incident," it does define both "claims" and "loss events."  As discussed above, a "claim" is defined in reference to four specific events: (1) the filing of a lawsuit; (2) written notice of intent to file a lawsuit or to arbitrate; (3) a written demand for money or services; or (4) a written notice of a loss event that describes, *inter alia*, the name of the patient and the circumstances under

14

which the Insured became aware of an injury suffered by the patient.[14] 2012 Policy at 21–22. Meanwhile, a "loss event" is defined as "all **damages** to all persons for injuries to one patient and his or her spouse and or children arising out of the rendering of, or failure to render, **medical professional services** to a patient . . . ." [15]  *Id.* at 22.  Notably, the definition of the term "damages" is limited to a "settlement, award or judgment which an **Insured** becomes legally obligated to pay." *Id.*  Thus, because a "loss event" is defined in

---

[14] To reiterate, the 2012 Policy defines a claim accordingly:
>    A. "**claim**" means:
>> 1. the filing of a lawsuit against an **Insured**, and/or
>> 2. **written notice** of intent to file a lawsuit or to arbitrate against an **Insured**, and/or
>> 3. a written demand for money or services delivered to an **Insured**, and/or
>> 4. **written notice** of a **loss event** from the **Named Insured**, **Additional Insured** or **Additional Named Insured** detailing the name of a patient, witnesses and the circumstances under which the **Insured** became aware of **injury** suffered; and
>    as a result of a **loss event** which occurred subsequent to the **retroactive date** of this Policy and which has been reported to the Company in writing, prior to the **expiration date** or the expiration of an applicable **Extended Reporting Period** Endorsement.

2012 Policy at 21–22.

[15] The full definition is:
> "**loss event**" means all **damages** to all persons for injuries to one patient and his or her spouse and or children arising out of the rendering of, or failure to render, **medical professional services** to a patient, irrespective of the number of **medical professional services** or **Insureds** involved or the period of time during which such **medical professional services** are rendered or failed to be rendered.  One **loss event** may include, but is not limited to, the administration of, or failure to administer, one or more treatments, procedures, tests, drugs, medicines or care by one or more **Insureds** over a period of time which may begin during one policy period and continue beyond into one or more other policy periods.  The treatment of a course of pregnancy will be considered to be a single **loss event** and only one per **loss event** limit of liability applies.
>
> Only one **loss event** limit of liability shall apply to all **Insureds** for all **damages** to all persons for **injuries** to one patient, which limit of liability shall be the limit under the policy in effect on the date the **claim** is first made to the Company.

2012 Policy at 22.

15

terms of a "settlement, award or judgment," the term does not encompass mere injuries to patients. Accordingly, both of the expressly-defined terms contained in Exclusion 11(ii) are defined not in terms of an actual injury to a patient but instead in terms of liability (or potential liability) for such injuries.

In fact, as opposed to "damages," the Policy defines "injury" in terms of the actual negative effects experienced by patients. *Id.* ("[I]njury means bodily injury, sickness, disease, or other injury sustained by any patient, his or her spouse and or children, including mental anguish, loss of income or death, resulting from a rendering of or failure to render, an act or omission or series of acts or omissions of an Insured in the rendering of, or failing to render, medical professional services." (formatting omitted)). Significantly, Exclusion 11(ii) does not include the word "injury."

In light of the other language in the Policy, this Court must conclude that the term "incident" is ambiguous. On the one hand, the term could apply to some sort of claim or action against Dr. Aron by a patient, just as the other defined terms in Exclusion 11(ii) suggest.[16] On the other hand, the term could suggest some sort of injury to a patient that could potentially give rise to a claim against the insured.[17]

In light of this ambiguity, this Court must construe the Policy against Catlin Specialty Insurance. *See Dutta v. State Farm Ins. Co.*, 363 Md. 540, 556 (Md. 2001). Considering that

---

[16] This interpretation is bolstered by the fact that the term "injury" is a defined term in the 2012 Policy.

[17] In fact, even this injury-based construction of the term would be ambiguous, as the various definitions of the term "incident" conflict with respect to whether an "incident" is a particularly remarkable or a fairly routine event. Indeed, there is no indication from the language of the Policy whether an incident, when defined as such, must be foreseeable, or simply encompasses *any* injury or complication arising from treatment of patients.

the other terms in Exclusion 11(ii) relate to claims (in the generic sense) against the insured rather than injuries to the insured's patients, this Court construes the term in a similar, claims-related fashion. This reading is buttressed by the fact that the Policy expressly defines "injury" in a way that significantly overlaps with the reading Catlin now offers for the undefined term "incident."

Under this reading of the term, there was no "incident" triggering the coverage exclusion. Specifically, Dr. Aron's receipt of the pathology report indicating that he had removed part of Ms. Pfenninger's ureter was merely an "injury" under the terms of the Policy. It was not the type of "incident" indicating an impending claim against Dr. Aron that was necessary to trigger Exclusion 11(ii).[18] Accordingly, Catlin has failed to show that coverage for Ms. Pfenninger's claim is excluded, and therefore Catlin Motion for Summary Judgment will be denied and Dr. Aron's Motion for Partial Summary Judgment will be granted.

## CONCLUSION

For the reasons stated above, the Motion of Defendants Dr. Barry I. Aron and Barry I. Aron, M.D., P.C., for Partial Summary Judgment (ECF No. 26) is GRANTED and the Plaintiff's Motion for Summary Judgment (ECF No. 30) is DENIED.

A separate Order follows.

Dated: August 6, 2014                                /s/
                                                     Richard D. Bennett
                                                     United States District Judge

---

[18] Neither the August 22, 2012 request for documents nor the alleged triggering of the peer-review process qualifies as an "incident" under this definition either. The August 22, 2012 document request occurred after the January 1, 2012 inception date and, therefore, does not trigger Exclusion 11(ii). Similarly, whether or not a peer review was conducted is irrelevant because it has nothing to do with an assertion of liability by Ms. Pfenninger against Dr. Aron.